# Richmond

ALFONSO ADAMS V. COMMONWEALTH OF VIRGINIA.

November 21, 1938.

Record No. 2021.

Present, Campbell, C. J., and Holt, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Nottingham & Nottingham,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Walter E. Rogers, Special Assistant,* for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

Alfonso Adams challenges a verdict and judgment whereby he was convicted and sentenced to serve six months in jail for shooting at Hiram Taylor, his father-in-law.

Previous to the shooting the accused and his wife, Hattie Taylor Adams, had domestic difficulties and separated. The wife later came to the home of her mother and father and was living there at the time of the shooting. On January 18, 1938, about three o'clock P. M., the accused accompanied by the Sheriff of Orange county went to the home of his parents-in-law for the purpose of effecting a reconciliation with his wife. At this time she told him she would let him know later whether or not she would go with him.

The accused had been told by Hiram Taylor not to go on his (Hiram's) premises. Hiram's attorney had also served him with written notice to the same effect. The accused disregarded the notices and went to Hiram's home when it was dark, at about 6:30 or 7:00 P. M., on January 18, 1938. He tapped on the window and asked his wife to come out. Her father, Hiram Taylor, went to the door and the accused said to him: "G— D— the law, * * * he did not want me." He further said, "you get the H— back in that house, and tell my wife to come out of there." The accused had a gun and pointed it at Hiram.

Hiram also testified that "I went back in the house and got my gun and went out but could not find him; I thought I heard something move in the bushes and shot at the bushes; he shot back and I shot again; he shot four times and I shot four times; I shot at the bushes because I thought he was in the bushes; he walked out of the honeysuckle and shot right at me; * * *. Nobody got hurt."

According to Hiram, a short time after the accused left in his truck, the truck was stopped in the road, two pistol shots were fired and two holes appeared in the top of the house which were apparently made by the pistol shots.

The accused denied that he was at the home of Hiram Taylor on the night of January 18, 1938, and produced a witness who testified that he was at another place at the time.

■ The only assignment of error is to the refusal of the trial court to give the following instruction: "The court instructs the jury that a husband has the right and it is his duty to make every reasonable effort to make up with his wife when they have become estranged, provided he does so in a peaceable and lawful manner, and he has the right to approach his said wife for this purpose wherever she may be; and if the jury further believe from the evidence that the accused went to the home of Hiram and Hattie Taylor (father and mother of his wife) in a lawful and peaceable manner for the purpose of making an effort to have his wife return to him, and the said Hiram Taylor

drew a gun and fired on the accused, the Court tells the jury that the accused had the right to defend himself by firing at the said Hiram Taylor, provided he did no more than was necessary to defend himself."

There are two reasons why the instruction should not have been given. First, the evidence did not warrant it, and second, the jury already had been sufficiently instructed on self-defense.

There is not the slightest evidence that the accused went to Hiram's home "in a lawful and peaceable manner." He said that he was not there at all while the evidence of the Commonwealth shows that he was there, armed and menacing Hiram by pointing the gun at him and using profane language. This evidence conclusively shows that he did not go to the home of Hiram "in a lawful and peaceable manner."

We do not decide whether the accused was entitled to any instruction on self-defense. He provoked the difficulty and voluntarily placed himself in a position which would likely lead to hostilities. However, the court gave instruction G-1 which defined the law of self-defense. It is as follows: "The Court instructs the jury that if they believe from the evidence that Hiram Taylor was the first to fire a gun, and did so at the accused while the accused was leaving his premises, the Court tells the jury that the accused had the right to return the fire to the extent necessary to save his life or to prevent great bodily harm to himself; and this is true although they may further believe from the evidence that the accused had been forbidden to go upon the premises of the said Hiram Taylor."

If it is conceded that the accused was entitled to an instruction on self-defense, the one given (G-1) was sufficient.

There is no assignment challenging the sufficiency of the evidence and none could be well made for the evidence abundantly supports the verdict and judgment.

The judgment is affirmed.

*Affirmed.*